**Michael R. ANDERSON, et al., Plaintiffs-Appellants, Cross-Appellees,**

v.

**IDEAL BASIC INDUSTRIES; United Cement, Lime, Gypsum, and Allied Workers International Union; and Cement, Lime, Gypsum, and Allied Workers Division International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, Defendants-Appellees, Cross-Appellants.**

Nos. 85–5793, 85–5960.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 22, 1986.

Decided Nov. 6, 1986.

Harry Wiersema, Jr. (argued), Knoxville, Tenn., for plaintiffs-appellants, cross-appellees.

Griffin B. Bell, Jr. (argued), Mark E. Edwards, Atlanta, Ga., Jack W. Bowers, Foley, Bowers and Bell, Knoxville, Tenn.,

Stephen Rubin (argued), Chicago, Ill., for defendants-appellees, cross-appellants.

Before MARTIN, GUY and NORRIS, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

One hundred ten members of Local Union No. 140 of the United Cement, Lime, Gypsum and Allied Workers International Union appeal the district court's grant of summary judgment for the defendants in this hybrid section 301 action in which the Local Union members alleged breach of the collective bargaining agreement and breach of the duty of fair representation. Defendant Ideal Basic Industries cross-appeals the district court's determination that the close-out agreement Ideal negotiated with the Union is ambiguous and did not eliminate termination benefits contained in the collective bargaining agreement.

In September 1983, Ideal announced its intention to sell its Knoxville, Tennessee, cement plant to Moore McCormack. On December 5 and 6, Union and Ideal officials met to consider the closeout of the existing collective bargaining agreement. Those attending were a vice-president of the International Union (Bechtholdt), the district representative for the Local Union (Todd), the industrial relations director for Ideal (Witt), and Ideal's lawyer (Newman). They drew up a closeout agreement which provided assured employment with Moore McCormack for employees on the seniority list, vested pension for hourly employees on the list, and pro rata vacation pay. In addition the Union agreed to drop all pending grievances against Ideal. The agreement purported to satisfy all obligations of Ideal to the Union and to the employees. On December 12, Ideal sent out termination notices to all its employees. On December 13, Moore McCormack assumed the operation of the plant, and all of Ideal's former employees began working for Moore McCormack's subsidiary, Dixie Cement Company.

On June 12, 1984, 110 members of the Local Union filed this hybrid section 301

action claiming breach of the collective bargaining agreement by Ideal and breach of the duty of fair representation by the International Union. The members complained that the closeout agreement deprived them of termination benefits and certain early retirement rights which were part of the collective bargaining agreement with Ideal. The members estimate the combined value of these benefits at $2 million.

The members charged Ideal with breach of the collective bargaining agreement for failing to pay termination benefits and failing to enforce a successorship clause. They charged the International Union with breach of its duty of fair representation for failing to seek arbitration regarding the effect of the sale, for failing to process grievances, and for negotiating the closeout agreement without the authorization or ratification of the Local Union. All parties filed motions for summary judgment based on the record submitted to the court. After full briefing and a hearing, the district court granted defendants' motion for summary judgment.

On appeal the Local Union members argue the district court erred (1) in ruling that the members failed to exhaust their intra-union remedies and contractual grievance procedures, (2) in holding that the International did not breach its duty of fair representation, (3) in refusing to order arbitration regarding entitlement to termination pay and other benefits under the collective bargaining agreement, and (4) in denying the members' motion to amend the pleadings to conform with the evidence. Ideal cross-appeals on the issue of the enforceability of termination benefits.

Before initiating an action under section 301 of the Labor Management Relations Act, union members are required to attempt to settle the dispute through internal union procedures. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Poole v. Budd Co.*, 706 F.2d 181 (6th Cir.1983). Failure to exhaust internal procedures is excused when an employer's conduct amounts to a repudiation of the contractual procedures

or when a union wrongfully refuses to process the grievance. *Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). Contrary to the members' assertions, neither of these situations exists in the present case. The Local Union members never filed a grievance with their employer, Ideal, until two weeks before they filed this lawsuit. It is spurious, therefore, for the members to claim that Ideal's conduct amounted to a repudiation of the grievance procedure. The members' inaction precludes a finding of repudiation by Ideal. Similarly, the members cannot argue that the International Union was derelict in processing grievances when no grievance was filed until shortly before this action was commenced. The members argue they were frustrated in their effort to grieve because they were told by Todd of the International that no grievance procedure remained after the sale of the plant. This argument is unconvincing since grievances were eventually filed on May 31, 1984. The claim of the members that they were excused from exhausting their internal remedies is without merit.

As to the second issue on appeal, a union breaches the duty of fair representation when its conduct towards its members is "arbitrary, discriminatory, or in bad faith." *Ruzicka v. General Motors Corporation*, 523 F.2d 306 (6th Cir.), *reh'g denied*, 528 F.2d 912 (1975) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967)). A union is afforded a wide range of reasonableness in representing its members, "subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Shamblin v. General Motors Corporation*, 743 F.2d 436, 438 (6th Cir.1984) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338–39, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). The Local members argue that their Union representatives breached the duty of fair representation in negotiating the closeout agreement. They charge that the International was unfamiliar with the provisions of the collective bargaining agreement and that the benefits secured in the closeout

agreement were duplicative of obligations already owed the members by Ideal. We find that the Local members have failed to point out specific actions of the Union that were arbitrary, discriminatory, or in bad faith. The terms of the discontinuation benefits are found in the supplemental unemployment benefit plan agreement negotiated by Ideal and the Union. This agreement defines "termination" in pertinent part as "ceasing employment by reason of a layoff of two (2) or more years' duration (or of lesser duration where loss of seniority is involved) or a termination of employment resulting from a permanent shutdown of a plant, department or subdivision thereof, which occurs after May 1, 1959." We make no judgment as to whether in the event the Local members had exhausted their internal remedies the agreement would have provided for termination benefits in this situation. We conclude simply that it was reasonable for the Union negotiators to believe that members of the Local were not entitled to benefits. There was never a layoff or plant shutdown as a result of the sale. The day after the employees were terminated by Ideal those that chose to work were on the payroll of Dixie Cement. The relevant issue in assessing a Union's judgment is not whether it acted incorrectly, but whether it acted in bad faith. *St. Clair v. Local Union No. 515 of International Brotherhood of Teamsters, etc.*, 422 F.2d 128, 131 (6th Cir.1969). We find no evidence in this case to support the contention that the Union breached its duty of fair representation.

■ Similarly, case law supports the Union's position regarding the enforceability of the successorship clause of the collective bargaining agreement. Although a successor employer may be compelled to bargain with retained employees over the terms of a new collective bargaining agreement, the successor is under no duty to assume the predecessor's obligations under a collective bargaining agreement or even to hire the employees of the previous owner. *NLRB v. Burns International Security*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972);

*NLRB v. East Side Shopper, Inc.*, 498 F.2d 1334 (6th Cir.1974).

We find the other issues raised by the Local members on appeal to be without merit.

With regard to Ideal's request that the decision of the district court be reformed on the issue of the availability of termination benefits under the closeout agreement, we find nothing in the record to warrant disturbing the analysis used in the district court opinion.

The decision is affirmed.