**Michael MARSHALL and Yvonne Marshall, Plaintiffs,**

v.

**ORMET CORPORATION, Duane Bohrer, Robert Emery and Local Union # 5724, United Steelworkers of America, Defendants.**

**No. C2–88–0575.**

United States District Court, S.D. Ohio, E.D.

May 8, 1990.

Don A. Yannerella and Randy Dean Gossett, Wheeling, W.Va., for plaintiffs.

Charles H. Bean, Thornburg & Bean, St. Clairsville, Ohio, Jeffrey M. Betz, Reminger & Reminger, Columbus, Ohio, John J. Myers and Maura C. Newcomb, Eckert, Seamans, Cherin & Mellott, Pittsburg, Pa., and Patrick S. Cassidy, O'Brien, Cassidy & Gallagher, Wheeling, W.Va., for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This case is before the Court pursuant to defendants' Ormet Corporation, Duane Bohrer, Robert Emery and Local Union #5724, United Steelworkers of America, motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Ohio Revised Code § 4121.80(C), in their favor on the Complaint filed by plaintiffs, Michael Marshall and Yvonne Marshall. Defendants cite several grounds for their Motions, including the following:

(1) Plaintiffs cannot establish a *prima facie* case on any of their claims;

(2) Plaintiffs' state tort claim of intentional infliction of emotional distress is preempted by Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Section 185(a);

(3) Ohio does not recognize the "tort of outrage";

(4) Plaintiffs' claim for violation of Ohio Revised Code Section 2903.21 is a criminal claim and not properly brought in a civil action;

(5) Plaintiffs cannot establish a *prima facie* case on their claim for a violation of Title 42, United States Code, Section 1981; and

(6) Yvonne Marshall's claim for loss of consortium is a derivative claim which will fall, *a fortiori.*

## FACTS

On July 19, 1988, plaintiffs Michael and Yvonne Marshall filed an amended complaint with this Court, alleging that defendants Ormet Corporation, Duane Bohrer and Robert Emery committed acts in violation of Title 42, United States Code, Section 1981 (Count One); that said defendants committed a "tort of outrage" against plaintiff Michael Marshall (Count Two); that said defendants intentionally inflicted emotional distress upon said plaintiff (Count Three); that defendants Robert Emery and Ormet Corporation engaged in an unlawful, willful, malicious and intentional act which placed said plaintiff in a reasonable apprehension of immediately receiving a violent injury in violation of Ohio Revised Code Section 2903.21 (Count Four); that defendant Local Union #5724, United Steelworkers of America, of which plaintiff Michael Marshall is a member, breached its duty of fair and adequate representation owed said plaintiff (Count Five); and that as a result of the conduct of all four defendants toward plaintiff Michael Marshall, plaintiff Yvonne Marshall, wife of Michael Marshall, has suffered the loss of her husband's companionship, society and consortium (Count Six).

Plaintiff Michael Marshall demands judgment against all four defendants, jointly and severally, in the amount of $2,500,000.00 in compensatory damages, and against defendants Ormet Corporation, Duane Bohrer and Robert Emery, jointly and severally, in the amount of $2,000,000.00 in punitive damages plus interests and costs. Plaintiff Yvonne Marshall demands judgment against all four defendants, jointly and severally, in the amount of $200,000.00 in compensatory damages plus interests and costs.

Plaintiffs' case is based on an incident which occurred on July 20, 1987. On that date, defendant Robert Emery, an employee of defendant Ormet Corporation (the Company) and member of the bargaining unit of Local Union #5724, United Steelworkers of America (the Union) at Ormet Aluminum Reduction Plant, approached a group of four other bargaining unit employees while wearing what appeared to be a Ku Klux Klan hood. The hood was actually a white "filter bag" with eye holes cut in it that Emery had found in his foreman's

office. Included in the group of employees was plaintiff Michael Marshall, the only black person in the group. Defendant Duane Bohrer, Marshall's immediate supervisor, was also apparently nearby although he denies having witnessed the incident. According to plaintiff, Emery pointed at Marshall and called him "Boy", at which point Marshall became extremely upset. Bohrer did nothing to stop Emery's actions. Although Marshall knew Emery as a coworker, he did not recognize him at the time because of the hood. Upon noticing that Marshall was upset, Emery took off the hood and apologized, explaining that he had only worn the hood as a joke.

Marshall immediately went to Duane Bohrer's office to report the incident. Bohrer replied that it was probably meant as a practical joke, but that he would speak with Emery's supervisor. The next day, Marshall reported the incident to Union representatives and he was also contacted by a Joint Equal Employment Opportunity Commission chairman about what had happened. Emery again apologized to Marshall.

On July 24, 1987, Marshall called off work, claiming he could not handle the pressure. Marshall has not since returned to work at Ormet. During this time, Marshall has been under the care of physicians, psychiatrists, and psychologists, who have treated him for his alleged nervous condition, prescribing various medications and advising him to cease drinking and smoking.

The Company suspended Emery for five days for the purpose of discharge for intimidation and defaming Marshall. This discipline was later converted to a suspension without pay. Supervisor Duane Bohrer was put on probation for six months and a permanent letter was placed in his file. Emery filed two grievances with regard to his discipline, and the Union represented him in these grievances.

Toward the end of July, Marshall indicated he intended to file a grievance with the Union concerning Emery's action. The Union official gave Marshall a grievance form, telling him to fill it out and return it to him. Marshall states that the Union official neglected to tell him how to fill out the form and failed to explain which type of violation to allege and what relief he should request on the form. Marshall filled out the form with the help of an attorney and returned it to the chairman of the grievance committee on August 19, 1987. The chairman made no recommendation or comment as to whether the grievance was in proper form. The Union then filed the grievance in the third step on September 4, 1987. The third step meeting was held without Marshall on June 9, 1988, where the Union reiterated Marshall's position that the Company's answer was untimely.

On June 23, 1988, after the Union was made a defendant in this suit, the Company answered the grievance, stating that the grievance must be denied because it failed to allege the specific articles of the Collective Bargaining Agreement between the Union and the Company which had been violated and failed to set out any circumstances that could be considered a violation of any article.

The Union referred the grievance to the fourth step on June 23, 1988. At this time, the Chairman of the Grievance Committee wrote plaintiff, asking if he would be available for a fourth step meeting. Plaintiff never responded. Without amending the grievance form, the Union proceeded to step four of the procedure on September 28, 1988, where the grievance was again denied by the Company for the same reasons as before. The grievance is now awaiting arbitration.

Marshall did not file a charge with either the Civil Rights Commission of Ohio or the Equal Employment Opportunity Commission, but instead chose to file the instant suit against the Company, Emery, supervisor Bohrer, and the Union.

In his complaint against the Company, plaintiffs allege that the Company committed an intentional tort pursuant to 42 U.S.C. Section 1981 by failing to exercise due care in the training, hiring and retraining of employees, by failing to investigate and/or punish Bohrer and/or Emery, and

by engaging in a pattern of unlawful discriminatory practices.

The essence of plaintiffs' claim against the Union is that the Union allegedly failed to pursue plaintiffs' grievance in a timely fashion; that the Union's representation of Emery resulted in an alleged conflict of interest; and that the Union allegedly engaged in a pattern of discriminatory practice.

## STANDARD OF REVIEW

In considering a motion for summary judgment, the Court is mindful that summary judgment is appropriate only in limited circumstances. Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The moving party bears the burden of establishing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The Supreme Court has held, however, that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict, if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), (citing *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."

*Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

## ANALYSIS OF LAW

### 42 U.S.C. § 1981

■ Plaintiffs' first claim is that defendants have discriminated against Michael Marshall by allegedly subjecting him to a racially hostile work environment in violation of 42 U.S.C. § 1981. This claim must be dismissed, however, due to the Supreme Court's recent decision in *Patterson v. McLean Credit Union,* 491 U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Patterson,* the plaintiff brought a § 1981 racial harassment claim in which she alleged the existence of a racially hostile work environment. The Court, narrowly interpreting the statute, found that § 1981 did not apply to racial harassment relating to the conditions of employment; rather, it applied only to discriminatory conduct occurring in the making and enforcement of contracts. *Patterson,* 491 U.S. at ——, 109 S.Ct. at 2369. *See also Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475 (6th Cir.1989); *W.J. Becton v. Burlington Northern R.R. Co.,* 878 F.2d 1436 (6th Cir.1989). Accordingly, the Court upheld the district court's withholding of the § 1981 racial harassment claim from the jury, thereby severely restricting the previously broad scope of the statute.

As the *Patterson* Court has determined that racially hostile work environment actions no longer exist under § 1981, plaintiffs in the instant suit are now necessarily precluded from bringing such a claim. Plaintiffs' claim is therefore DENIED.

### *Intentional Infliction of Emotional Distress and Other Tort Claims*

1. *Preemption*

■ Plaintiffs also allege that defendants intentionally inflicted emotional distress upon Michael Marshall. Defendants' primary contention here is that this state tort claim is preempted by § 301 of the Labor Management Relations Act and therefore must be dismissed. Plaintiffs respond by arguing that said claim is not

preempted because it constitutes an independent claim not founded on the collective bargaining agreement between the Union and the Company. It is the opinion of this Court that plaintiffs' state tort claim, although not preempted by § 301 of the L.M.R.A., must be dismissed for failure to establish a prima facie case of intentional infliction of emotional distress.

In arguing against preemption, plaintiffs cite *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), in which the Supreme Court set out the test for § 301 preemption: if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, application of state law is preempted and federal labor law principles must be employed to resolve the dispute. *Id.* at 406, 108 S.Ct. at 1881; *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In *Lingle*, the Court held that petitioner's state claim against her employer for retaliatory discharge for allegedly filing a false workers' compensation claim was not preempted by § 301 because the claim could be resolved without interpreting the collective bargaining agreement itself. Under Illinois law, the petitioner in *Lingle* had to show that she was discharged or threatened with discharge, and that the employer's motive was to deter or interfere with petitioner's exercise of her rights arising under the Workers' Compensation Act. Since neither of these elements required a court to interpret any term of a collective bargaining agreement, the claim was independent of the agreement for § 301 preemption purposes.

In the instant suit, plaintiffs adopt the reasoning used in *Lingle* in contending that any factual inquiry as to whether defendants committed acts which constitute the elements of intentional infliction of emotional distress will similarly not require this Court or any jury to interpret any provision of the collective bargaining agreement between the Union and the Company. Although Article XXXII of the collective bargaining agreement proscribes racial discrimination, establishes a Joint Equal Employment Opportunity Committee to resolve problems involving discrimination, and provides that the chairman of the Union's grievance committee may file a grievance in the third step of the grievance procedure alleging a violation of the Article, plaintiffs argue that these provisions need not be interpreted in order to resolve their claim.

In response, defendants cite *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), where the Supreme Court held that a state tort action for breach of an insurer's duty to act in good faith and deal fairly with disability insurance claimants was preempted even though the collective bargaining agreement did not directly address the good faith issue. The Court stated that the right asserted by the plaintiff "derives from the contract," *Id.* at 218, 105 S.Ct. at 1914, and hence, "[u]nless federal law governs that claim, the meaning of the health and disability-benefit provisions of the labor agreement will be subject to varying interpretations, and the congressional goal of a unified federal body of labor-contract law would be subverted." *Id.* at 220, 105 S.Ct. at 1915.

Plaintiffs note, however, that the Court in *Allis-Chalmers* emphasized that questions of contract interpretation were necessarily underlying any finding of tort liability in that case: "The parties' agreement as to the manner in which a benefit claim would be handled will necessarily be relevant to any allegation that the claim was handled in a dilatory manner. Similarly, the question whether *Allis-Chalmers* required Lueck to be examined by an inordinate number of physicians evidently depends in part upon the parties' understanding concerning the medical evidence required to support a benefit claim. *Id.* at 218, 105 S.Ct. at 1914. The Court pointed out that had the case gone to trial, "a central factual question would have been whether the manner in which Lueck's claim was processed and verified had departed substantially from the standard manner of processing such claims under the contract.

That question, of course, necessarily involves contract interpretation." *Id.* at 218 n. 12, 105 S.Ct. at 1915 n. 12. Finally, the Court stressed the narrow focus of its conclusion in *Allis–Chalmers*, explaining that it did not hold that every state-law suit asserting a right that related in some way to a provision in a collective-bargaining agreement was necessarily preempted by § 301, and that the full scope of the preemptive effect of federal labor-contract law remained to be fleshed out on a case-by-case basis. *Id.* at 220, 105 S.Ct. at 1916.

Defendants also rely on *Knafel v. Pepsi Cola Bottlers of Akron, Inc.,* 850 F.2d 1155 (6th Cir.1988), as support for their argument that plaintiffs' state tort claims are preempted by § 301. In *Knafel,* plaintiff Wuchich alleged that the defendant intentionally caused her emotional and physical injury by reason of the work assigned to her in retaliation for Wuchich's participation in a prior civil rights action against Pepsi. The court held that her claim was preempted by § 301.

*Knafel* may be distinguished from the instant suit, however. In *Knafel,* the plaintiff was protected by a collective bargaining agreement which imposed restrictions on her employer regarding working conditions and transfers. *Id.* at 1162. There, plaintiff's claim for intentional infliction of injury allegedly arose due to defendant's having assigned her to projects that were calculated to aggravate her back condition. The type of work assigned to an employee is, of course, part of that employee's working conditions. Since the collective bargaining agreement in *Knafel* covers working conditions, and requires arbitration of any dispute regarding the applicability or interpretation of the agreement, or rights or obligations under any of its provisions, *Id.,* the Court found plaintiff's claim to be "substantially dependent upon analysis of the agreement" and thus preempted by § 301.

Defendants argue that the instant case is directly on point with *Knafel* and that plaintiffs' emotional distress claim requires this Court to consider "the reasonableness or outrageousness of Ormet's behavior,

which in turn, could depend upon whether such behavior violated the collective bargaining agreement." In addition, defendants cite *Miller v. AT & T,* 850 F.2d 543 (9th Cir.1988), in which another claim of intentional distress was similarly found to be preempted by § 301. There, the court looked to state tort law and found that "evaluation of the intentional infliction of emotional distress requires construction of terms in the CBA. In order to establish intentional infliction of emotional distress in Oregon, a plaintiff must demonstrate that an employer's conduct extended 'beyond the farthest reaches of socially tolerable behavior.'" The court went on to explain that under Oregon law this standard depended on the relationship between plaintiff and defendant. Therefore the outrageousness of the employer's conduct could depend on whether the behavior violated the terms of the CBA. *Id.* at 551.

In Ohio, in order to establish intentional infliction of emotional distress the plaintiff must show that "the defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and was such that it could be considered as utterly intolerable in civilized society." *Pyle v. Pyle,* 11 Ohio App.3d 31, 463 N.E.2d 98 (1983). But, unlike Oregon, Ohio law does not necessarily make this standard dependent upon the plaintiff-defendant relationship. Furthermore, the mere fact that the collective bargaining agreement in this case contains an anti-discrimination clause does not mean that plaintiffs' claim is necessarily dependent upon the interpretation of that provision:

"The operation of anti-discrimination laws does, however, illustrate the relevant point of § 301 preemption analysis that the mere fact that a broad contractual protection against discriminatory— or retaliatory—discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract. For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclu-

sion might or might not be consistent with the proper interpretation of state law. In the typical case, a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the just cause language of a collective bargaining agreement."

*Lingle,* 108 S.Ct. at 1885. *See also Allis–Chalmers v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1915–16, 85 L.Ed.2d 206.

Ohio tort law does not require looking to the employer-employee relationship in order to establish intentional infliction of emotional distress. While the relationship may be instructional in interpreting whether a valid intentional infliction claim exists, one need not have an employer-employee relationship in order to prevail in Ohio. Thus, this Court has no need to interpret the CBA in order to determine whether defendants' conduct meets the extreme and outrageous standard set out in *Pyle.* Accordingly, plaintiffs' claim for intentional infliction of emotional distress is not preempted by § 301 of the Labor Management Relations Act.

## 2. *Failure to Establish a Prima Facie Case*

■■■ The four elements of intentional infliction of emotional distress are: (1) That the defendant either intended to cause the plaintiff emotional distress or that he knew or should have known that his actions would cause the plaintiff emotional distress; (2) That the defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and was such that it could be considered as utterly intolerable in civilized society; (3) That the defendant's conduct was the proximate cause of the plaintiff's physical injury; and (4) The mental anguish suffered by the plaintiff was serious and such that a reasonable, normally constituted person would

be unable to cope with the mental distress engendered by the circumstances. *Pyle v. Pyle,* 11 Ohio App.3d at 34, 463 N.E.2d 98. Plaintiff's claim for intentional infliction of emotional distress must be dismissed on the grounds that plaintiff has failed to establish a prima facie common law case of intentional tort under the former standard set forth in *Jones v. VIP Development Co.,* 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984), and hence, has also failed to meet the new stricter standard pursuant to Ohio Revised Code § 4121.80(G) [1].

Prior to the effective date of § 4121.80, August 22, 1986, the previous well-defined *Jones* requirement of substantial certainty was: "... a specific intent to injure is not an essential element of an intentional tort where the actor proceeds despite a perceived threat of harm to others which is substantially certain ... to occur." *Id.* at 95, 472 N.E.2d 1046. This standard was based largely upon the explanatory language for "intent" found in 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A.

In *Van Fossen v. Babcock & Wilcox Company,* 36 Ohio St.3d 100, 522 N.E.2d 489 (1988), the Ohio Supreme Court subsequently reinterpreted *Jones,* and found that in order to establish an intentional tort under present § 4121.80 standards, it was necessary to establish proof beyond that needed to prove negligence and beyond that needed to prove recklessness. The court stated:

> Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or sub-

---

**1.** O.R.C. § 4121.80(G) defines intentional tort as:

> "Intentional Tort" is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur.
>
> Deliberate removal by the employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance

is evidence, the presumption of which may be rebutted, of an act committed with the intent to injure another if injury or an occupational disease or condition occurs as a direct result. "Substantially certain" means that an employer acts with a deliberate intent to cause an employee to suffer injury, disease, condition, or death.

stantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent.

*Id.* 36 Ohio St.3d at 117, 522 N.E.2d 489.

Thus, in *Van Fossen,* the Ohio Supreme Court redefined the *Jones* standard for those cases arising before the effective date of § 4121.80, and noted that the definition of "intentional tort" and "substantially certain" as defined in the new statute created a "new, more difficult statutory restriction" upon an individual's ability to prevail in an intentional tort claim. The court further interpreted *Jones* to require knowledge on the part of the employer as a vital element of the requisite intent. *Id.* 36 Ohio St.3d at 116, 522 N.E.2d 489.

Under the *Van Fossen* court's interpretation of *Jones,* to prove the existence of an intentional tort committed by an employer against her employee, the following must be shown:

(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within his business operation; (2) knowledge by the employer that if employees are required by virtue of their employment to be subjected to such dangerous process, procedure, instrumentality or condition, then harm to them would be a substantial certainty, and not just a high risk; (3) that the employer, under such circumstances, and with such knowledge, did act to so require the employee to continue performing his employment tasks.

*Id.* 36 Ohio St.3d at 116, 522 N.E.2d 489.

Defendants contend that plaintiffs' tort claim against them must fail because plaintiffs have not established any of these three criteria with respect to Bohrer's conduct. This Court agrees that plaintiffs have not made the requisite showing of intent under the standard set out in *Van Fossen,* and hence have also failed to meet the stricter standard for intent set out in O.R.C. § 4121.80(G). As a result, this Court GRANTS defendants' motions for summary judgment.

*Breach of Duty of Fair Representation*

Before initiating an action under § 301 of the Labor Management Relations Act, union members are required to attempt to settle the dispute through internal union procedures. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Poole v. Budd Co.,* 706 F.2d 181 (6th Cir.1983); *Anderson v. Ideal Basic Industries,* 804 F.2d 950, 952 (6th Cir. 1986). Failure to exhaust internal remedies is excused, however, when an employer's conduct amounts to a repudiation of the contractual procedures or when a union wrongfully refuses to process their grievance. *Vaca v. Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976).

In the instant suit, defendant Union argues that plaintiffs have failed to exhaust their remedies under the grievance arbitration procedure provided in Article 21 of the Collective Bargaining Agreement, and thus their claim is unripe for adjudication by this Court. Plaintiffs contend that as a result of the aforementioned breach of duty of fair representation it would be futile to attempt to exhaust remedies through the grievance procedure, and that plaintiffs are therefore entitled to bring this suit in Federal District Court.

Plaintiffs claim that defendant Local Union 5724, United Steelworkers of America breached the duty of fair representation it owed plaintiff as a member of the bargaining unit in the following ways: (1) Failing to pursue a grievance in a timely manner; (2) Failing to process said grievance adequately within the prescribed time period pursuant to Article 21 of the Collective Bargaining Agreement between the Union and the Company; (3) Failing to protect its members from employee discrimination regarding matters not covered by the Collective Bargaining Agreement; (4) Failing to negotiate for non-discriminatory treatment regarding matters not in the Collective

Bargaining Agreement; and (5) Having engaged in a pattern of unlawful discriminatory practices in the past as well as the present.

A union has a statutorily imposed duty "fairly to represent all of those employees [in the bargaining unit], both in its collective bargaining with [the employer] ... and in its enforcement of the resulting collective bargaining agreement." *Vaca v. Sipes*, 386 U.S. at 177, 87 S.Ct. at 909–10. The seminal Supreme Court decision on the duty of fair representation is *Steele v. Louisville & Nashville Railroad, Co.*, 323 U.S. 192, 194, 65 S.Ct. 226, 228, 89 L.Ed. 173 (1944), where the Court analogized a union's duty of fair representation "to the duty of a legislature to treat equally all for whom it legislates." *Bowman v. TVA*, 744 F.2d 1207, 1211 (6th Cir.1984) (citing *Steele*, 323 U.S. at 198, 65 S.Ct. at 230).

■ The duty of fair representation is implicated only where a Union engages in particularly egregious conduct. "A union is afforded a wide range of reasonableness in representing its members, 'subject always to complete good faith and honesty of purpose in the exercise of its discretion.'" *Anderson*, 804 F.2d at 952 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338–39, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). *See also Hines*, 424 U.S. at 563–64, 96 S.Ct. at 1055–56. In order to prevail on a duty of fair representation claim, a bargaining unit member must show that the Union's conduct toward him was arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. at 190, 87 S.Ct. at 916; *Taylor v. Ford Motor Co.*, 866 F.2d 895, 896 (6th Cir.1989); *Anderson*, 804 F.2d at 952; *Poole v. Budd Co.*, 706 F.2d at 183.

■ The burden on a plaintiff regarding a challenge to a Union's judgment in its handling of a grievance is especially heavy. A union may be found to have breached its duty of fair representation only where it has arrived at its judgment in bad faith, *Anderson*, 804 F.2d at 953, or in such an arbitrary, capricious or reckless manner that "no rational explanation" for its actions can be discerned. *Poole*, 706 F.2d at 184. The ignoring or perfunctory process-

ing of a grievance may violate the duty of fair representation. *Vaca v. Sipes*, 386 U.S. at 194, 87 S.Ct. at 919.

■ In the instant suit, however, plaintiffs have not pointed out specific actions of the Union that were arbitrary, discriminatory, or in bad faith. Nor have plaintiffs demonstrated that the Union lacked a rational justification for the delay of plaintiffs' grievance. Defendants explain that in the eight to ten month interval between September 4, 1987, when the grievance was referred to the third step of the grievance-arbitration process, and June 23, 1988, when the Chairman of the Grievance Committee wrote to plaintiff, plaintiff would not come in to the plant to supply the necessary evidence to support his grievance, and also would not comply with several requests that he meet with Union officials. The Union did not press plaintiffs' grievance during this period because the prevailing practice was to wait until the grievant was available. According to *Ruzicka v. General Motors Corp.*, 649 F.2d 1207 (6th Cir.1981), reliance on a prevailing practice sufficiently explains union inaction.

■ Plaintiffs further contend that resort to the grievance arbitration procedure was futile because of the Union's alleged conflict of interest in representing both plaintiff and defendant Emery. Defendant points out that the Union also owed Emery the duty of fair representation. Under *Humphrey v. Moore*, 375 U.S. 335, 349–350, 84 S.Ct. 363, 371–72, 11 L.Ed.2d 370 (1963), a union must and can, without violating anyone's rights, represent employees with conflicting interests. Moreover, when faced with a conflict between its members, a union need not act neutrally. *Id.*

■ In addition, plaintiffs allege that the Union has practiced a pattern of racial discrimination in its representation of employees at Ormet Corporation. Plaintiffs cite documents finding the Company guilty of race discrimination against John McGee in 1985. This is only evidence of a single act of discrimination by the Company, not the Union. Plaintiffs also point to a state-

ment made by a Union steward that there was "potential for a wildcat strike if Robert Emery is fired." Taken together, these two instances do not amount to a pattern of discrimination practiced by the Union in its representation of employees at Ormet Corporation.

Plaintiffs have not identified any disputes of material fact sufficient to justify plaintiff's abandonment of the grievance-arbitration process and his filing suit prior to the now pending arbitration hearing. Not having met the heavy burden of showing that the Union unfairly represented him, plaintiffs' claim against the Union is dismissed.

### Loss of Consortium

Finally, plaintiff Yvonne Marshall claims a loss of consortium due to defendants' actions toward her husband, Michael Marshall. This claim is clearly derivative and dependent upon plaintiff Michael Marshall's claims. As all of plaintiff Michael Marshall's claims have been dismissed, it follows that the claim of Yvonne Marshall must also be dismissed.

### CONCLUSION

Based on the foregoing analysis, this Court concludes that there are no genuine issues of material fact sufficient to resist defendants' motions for summary judgment. Accordingly, defendants' motions are granted. Therefore, this case is DISMISSED.

IT IS SO ORDERED.