**Mark D. TATTON, Plaintiff,**

v.

**CITY OF CUYAHOGA FALLS, et al., Defendants.**

**No. 5:00-CV-1439.**

United States District Court, N.D. Ohio, Eastern Division.

Oct. 12, 2000.

---

Mark D. Tatton, Cuyahoga Falls, OH, pro se, for Mark D. Tatton, Plaintiffs.

John T. McLandrich, Mazanec, Raskin & Ryder, Cleveland, OH, Paul J. Cristallo, Mazanec, Raskin & Ryder Co., LPA, Solon, Virgil E. Arrington, Jr., City of Cuyahoga Falls, Cuyahoga Falls, OH, Joseph K. Oldham, Oldham & Dowling, Akron, OH, for City of Cuyahoga Falls, Gregory A. Kenepp, Sergeant Blevins, Adrienne J. Welfle, Defendants.

## OPINION

GWIN, District Judge.

On September 25, 2000, Defendants City of Cuyahoga Falls ("the City"), Police Officer Gregory Kenepp, and Police Sergeant Blevins filed a motion for summary judgment on the federal and state claims asserted against them by Plaintiff Mark D. Tatton [Doc. 24]. For the reasons set forth below, the Court grants the motion.

### I. Background

This case presents the frequently-recurring conflict between a citizen's right to free speech and the government's interest in preserving public order. Specifically, the Court considers whether the government acted lawfully in preventing an anti-abortion protester from displaying a photograph of an aborted fetus at a civic parade.

On May 31, 1999, Plaintiff Mark Tatton traveled to Cuyahoga Falls, Ohio, to publicly share his opposition to abortion. Specifically, Tatton intended to carry a large sign expressing his anti-abortion views along the route of the Cuyahoga Falls Memorial Day Parade. On one side, the sign depicted a healthy infant with the word "life." On the other side, the sign displayed a color photograph of an aborted fetus along with the word "abortion."

Tatton arrived at the parade route shortly before the start of the parade. He promptly began marching down the street on which the parade would soon commence. Tatton says he showed the crowd both sides of his sign and explained in a loud voice that "[t]his is the result of your choice, this is wrong, God will judge this, children are a gift from God. . . ."

Tatton encountered hostility from the crowd and feared for his own safety. This hostility came to a head when a citizen attempted to physically prevent Tatton from continuing his protest. Soon thereafter, Defendant Police Officer Gregory Kenepp, a patrolman with Defendant City of Cuyahoga Falls, arrived on the scene. Officer Kenepp and his supervisor, Defen-

**932**

dant Police Sergeant Blevins, informed Tatton that he could not march on the street and that he could not show the side of his sign that depicted the aborted fetus. Tatton agreed.

However, Officer Kenepp soon received word from a member of the crowd that Tatton had again caused a disturbance by showing the picture of the aborted fetus. At this point, Officer Kenepp arrested Tatton for disorderly conduct. Specifically, Officer Kenepp detained Tatton for fifteen minutes while he issued a citation. Officer Kenepp also confiscated the sign as evidence. The disorderly conduct charge was eventually dropped and Tatton later recovered his sign.

Claiming his arrest violated his constitutional rights, Plaintiff Tatton, proceeding *pro se*, filed suit against Officer Kenepp, Sergeant Blevins, and the City of Cuyahoga Falls under 42 U.S.C. § 1983.[1] Tatton alleges three distinct constitutional violations. First, Tatton alleges that the defendants violated his First Amendment right to freedom of speech. Second, Tatton says the defendants unreasonably detained him and seized his property in violation of the Fourth Amendment. Finally, Tatton asserts a violation of his right to equal protection of the laws under the Fourteenth Amendment.

Beyond his federal claims, Tatton alleges a state-law claim for intentional infliction of emotional distress. Tatton says he suffers continued anxiety as a result of his arrest.

The defendants seek summary judgment on each of Tatton's claims. In particular, the defendants say Tatton has failed to offer sufficient material evidence in support of his claims. Further, even if Tatton could establish a legal violation, the defendants say they are immune from liability.

The Court now considers the defendants' motion.

## II. Summary Judgment Standard

A court may grant summary judgment only if the materials properly before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). In deciding whether the moving party has met this burden, a court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law governing the issue, might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. *See 60 Ivy Street*, 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

---

**1.** Plaintiff Tatton's complaint also alleges an unlawful conspiracy under 42 U.S.C. § 1985 and § 1986. In responding to the defendants' motion for summary judgment on all claims,

Tatton has not offered any evidence or argument as to the existence of an unlawful conspiracy. Accordingly, the Court considers any claim under these statutes abandoned.

U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

### III. Analysis

### A. 42 U.S.C. § 1983

### 1. Individual Liability

Plaintiff Tatton sues Defendants Officer Kenepp and Sergeant Blevins under 42 U.S.C. § 1983. Tatton says Officer Kenepp and Sergeant Blevins violated his rights under the First, Fourth, and Fourteenth Amendments.

As an initial matter, the Court finds that Plaintiff Tatton has not presented any evidence suggesting that Sergeant Blevins played a significant role in the acts giving rise to the constitutional claims at issue.[2] Accordingly, the Court examines only the constitutionality of Officer Kenepp's conduct.

■ In so doing, the Court need not consider whether Officer Kenepp actually violated Tatton's constitutional rights. Qualified immunity shields Officer Kenepp from liability arising from each of the alleged constitutional violations.

■ Government officials performing discretionary functions generally have qualified immunity so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The purpose of such immunity is manifest. Where a public official's "duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken with independence and without fear of consequences." *Id.* at 819, 102 S.Ct. 2727 (internal quotations omitted).

■ Courts apply an "objective reasonableness" test in determining whether a government official has violated a clearly established right. This test "focuses on whether an official, given the facts that the official knew or reasonably should have known about the situation, should have known that his or her particular conduct would not pass scrutiny when applied to the law." *Long v. Norris,* 929 F.2d 1111, 1115 (6th Cir.1991).

■ The plaintiff bears the ultimate burden of proving that a government official is not entitled to qualified immunity. *See Wegener v. City of Covington,* 933 F.2d 390, 392 (6th Cir.1991). Whether the plaintiff has met this burden is a question of law. *See Monday v. Oullette,* 118 F.3d 1099, 1102 (6th Cir.1997).

Here, the Court finds that Plaintiff Tatton has not met this burden. In particular, Tatton fails to show that Officer Kenepp acted in an objectively unreasonable manner during the events in question.

■ Plaintiff Tatton first says that Officer Kenepp violated his First Amendment right to freedom of speech. Tatton contends that his anti-abortion protest is a

---

**2.** Plaintiff Tatton merely alleges that Sergeant Blevins, along with Officer Kenepp, warned him about displaying the photograph of the aborted fetus. Sergeant Blevins did not participate in Tatton's arrest or the confiscation of his sign. To the extent Tatton seeks to base his constitutional claims on Sergeant Blevin's warning, the Court finds the qualified immunity analysis set forth in the text equally applicable to Sergeant Blevins.

form of speech protected by the First Amendment. Thus, Tatton says Officer Kenepp could not prevent him from continuing his protest.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech. . . ." Thus, "[w]ithout a compelling interest, the government may not discriminate against private speech in a public forum on account of the speaker's views." *Pinette v. Capitol Square Review and Advisory Board,* 30 F.3d 675, 677 (6th Cir.1994); *see also Carey v. Brown,* 447 U.S. 455, 461-62, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *Niemotko v. Maryland,* 340 U.S. 268, 271-72, 71 S.Ct. 325, 95 L.Ed. 267 (1951).

Speech protected under the First Amendment need not consist of written or spoken words. *See Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) ("The First Amendment literally forbids the abridgment only of 'speech,' but we have long recognized that its protection does not end at the spoken or written word."). Expressive activities such as peaceful picketing with signs and other displays also constitute protected speech under the First Amendment. *See United States v. Grace,* 461 U.S. 171, 176-77, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983).

But not all forms of expression receive First Amendment protection. Words or other expressive activity that tends "to incite an immediate breach of the peace" fall outside of the First Amendment's protective sphere. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (discussing "fighting words" exception to the First Amendment protection).

In arresting Plaintiff Tatton for disorderly conduct, Officer Kenepp determined that Tatton's protest tended to incite an imminent breach of the peace. This conclusion is not objectively unreasonable.

Plaintiff Tatton aroused intense hostility from the parade crowd by displaying a graphic and disturbing photograph of an aborted fetus in the presence of children. This hostility led Tatton to fear for his own safety. And Tatton had a reasonable basis for this fear, as one member of the crowd physically confronted Tatton in order to force him to cease protesting.

After this confrontation, Tatton continued displaying the picture. Even after Officer Kenepp told Tatton he could not show the graphic picture, Tatton continued to inflame the crowd by holding his sign in a manner that allowed children and others to see the photograph.

Under these circumstances, the Court cannot say that a reasonable officer would have concluded that Tatton had a First Amendment right to continue protesting. Accordingly, Officer Kenepp is immune from liability on Tatton's First Amendment claim under 42 U.S.C. § 1983.

Plaintiff Tatton also contends that Officer Kenepp violated his Fourth Amendment rights. Tatton says both his arrest and the confiscation of his sign constitute unreasonable seizures.

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable . . . seizures. . . ." Thus, police officers do not possess unlimited authority to detain individuals or seize property.

Specifically, an officer cannot lawfully arrest an individual absent probable cause, *i.e.,* a "fair probability" that the individual has either committed or intends to commit a crime. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Once an officer makes a lawful arrest, the officer may seize any evidence of the crime located on the arrestee's person. *United States v. Place,* 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ("[I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in

order to prevent its concealment or destruction.").

In this case, Officer Kenepp determined that he had probable cause to arrest Plaintiff Tatton for disorderly conduct. Kenepp then took Tatton's sign as evidence of this violation. In so doing, the Court finds that Officer Kenepp did not act in an objectively unreasonable manner.

The City of Cuyahoga Falls Ordinance § 509.03 prohibits disorderly conduct. Specifically, this ordinance makes it unlawful to recklessly cause annoyance or alarm to another by "[m]aking an unreasonable ... gesture or display ... which by its usage inflicts or intends to incite an immediate breach of the peace."

Officer Kenepp observed Tatton draw a hostile reaction from the parade crowd by displaying a disturbing photograph of an aborted fetus in the presence of children. Moreover, Officer Kenepp saw one member of the crowd attempt to physically prevent Tatton from displaying the photograph. In this situation, Officer Kenepp's decision to cite Tatton for disorderly conduct is not objectively unreasonable. And, as a result, Officer Kenepp did not act unreasonably in seizing the sign as evidence of Tatton's disorderly conduct.

For these reasons, Officer Kenepp is immune from liability on Tatton's Fourth Amendment claim under 42 U.S.C. § 1983.

Finally, Plaintiff Tatton says Officer Kenepp violated his Fourteenth Amendment right to equal protection under the laws.[3] In particular, Tatton says Officer Kenepp selectively enforced the disorderly conduct ordinance against him because of his anti-abortion views.

The Equal Protection Clause prohibits the selective enforcement of laws based on arbitrary classifications. *See Stemler v. City of Florence*, 126 F.3d 856, 873-74 (6th Cir.1997). To establish a selective enforcement claim, a plaintiff must show that a government official, acting with a discriminatory purpose, enforced a law against persons belonging to an identifiable group while choosing to not enforce the law against similarly-situated persons outside of that group. *See id.* at 873.

Here, Officer Kenepp arrested Plaintiff Tatton for disorderly conduct, but did not cite any member of the crowd for such a violation. In so doing, Officer Kenepp did not act in an objectively unreasonable manner.

Specifically, Plaintiff Tatton has not offered any evidence suggesting that Officer Kenepp acted with a discriminatory purpose. Officer Kenepp did not verbally express any hostility toward Tatton's views on abortion. And Officer Kenepp allowed Tatton to continue protesting so long as he did not display the disturbing photograph of the aborted fetus.

In the absence of such evidence, the Court does not find that Officer Kenepp's acted in an objectively unreasonable manner when deciding to cite only Plaintiff Tatton. Thus, Officer Kenepp is immune from liability on Tatton's Fourteenth Amendment claim under 42 U.S.C. § 1983.

#### 2. Municipal Liability

Plaintiff Tatton also seeks to hold Defendant City of Cuyahoga Falls liable for the constitutional violations he alleges under 42 U.S.C. § 1983. Tatton says the City maintains a policy or custom "of stopping those whose free speech disturbs them."

However, Plaintiff Tatton offers no evidence in support of his claim. Instead, Tatton merely suggests that he "is prepared to testify as to the police officers as a group targeting him and expressing

3. In responding to the defendants' motion for summary judgment, Plaintiff Tatton alleges a due process violation under the Fourteenth Amendment. Specifically, Tatton challenges the City of Cuyahoga Falls Ordinance § 509.03 as void for vagueness. Tatton never alleged a due process claim in his complaint. He cannot initiate a void-for-vagueness challenge in his response to a motion for summary judgment. The Court thus does not address this new claim.

there [sic] dislike of Plaintiff." But even if he offered such testimony, Tatton would nevertheless fail to adequately support his municipal liability claim. A municipality cannot be held liable under § 1983 on a theory of respondeat superior. *See City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Rather, a plaintiff must show that the municipality's own policies or customs proximately caused a constitutional violation.

Because Plaintiff Tatton has failed to offer any material evidence showing he suffered a constitutional violation on account of Defendant City of Cuyahoga Falls's policies or customs, the Court grants summary judgment to the City on Tatton's 42 U.S.C. § 1983 claim.

### B. Intentional Infliction of Emotional Distress

In addition to his federal claim, Plaintiff Tatton asserts a state-law claim for intentional infliction of emotional distress. Tatton alleges that he endured public humiliation as a result of his arrest. He contends that he continues to suffer "anxiety about when will the next arrest take place...."

■ To prevail on a claim for intentional infliction of emotional distress, a plaintiff must show, *inter alia,* that the defendant's "conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community." *Pyle v. Pyle,* 11 Ohio App.3d 31, 34, 463 N.E.2d 98, 103 (1983) (internal quotations omitted). Further, the plaintiff must prove that the mental anguish suffered as a result of such outrageous conduct "is so serious and of a nature that no reasonable man could be expected to endure it." *Id.* (internal quotations omitted).

■ Plaintiff Tatton has not offered any evidence suggesting that Officer Kenepp acted in a manner so outrageous as to go beyond all possible bounds of decency. After observing the disturbing photograph on Tatton's sign, the children in the area, and the crowd's hostile reaction, Officer Kenepp told Tatton to stop displaying the photograph. When Tatton continued to hold his sign so that some members of the crowd could see the photograph, Officer Kenepp cited Tatton for disorderly conduct. In making this arrest, Officer Kenepp did not verbally or physically abuse Tatton. Nor did Officer Kenepp detain Tatton for an excessive period of time. Under these circumstances, the Court finds that no reasonable juror would find that Officer Kenepp acted in an outrageous manner.

■ Further, Plaintiff Tatton does not offer sufficient evidence showing he has suffered a mental injury beyond what a reasonable person could expect to endure. Tatton has not sought any psychiatric counseling or any other medical help on account of his alleged emotional distress. And when asked whether he has suffered any physical manifestations of emotional distress, Tatton said only that he has anxiety as to "when will the next arrest occur...." The record does not suggest that this anxiety is in any way "severe and debilitating." *Paugh, vs. Hanks,* 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983). Without more, Tatton cannot sustain his burden of offering material evidence showing a serious mental injury.

Accordingly, the Court grants summary judgment to the defendants on Plaintiff Tatton's state-law claim for intentional infliction of emotional distress.

### IV.

In sum, Plaintiff Tatton has failed to meet his burden of showing a need for trial on each of his claims. With regard to his 42 U.S.C. § 1983 claim, Tatton has failed to offer evidence sufficient to show that Defendants Officer Kenepp or Sergeant Blevins violated his clearly established constitutional rights. Nor has Tatton presented evidence showing that Defendant City of Cuyahoga Falls maintained a policy or custom that caused any constitutional deprivation. As for his state-law intentional infliction of emotional distress claim, Tatton does not present evidence that suggests

Officer Kenepp acted in an outrageous manner so as to cause a severe and debilitating mental injury.

For these reasons, the Court grants summary judgment to the defendants on all of Plaintiff Tatton's claims.

IT IS SO ORDERED.

### JUDGMENT

The Court has entered its opinion in the above-captioned matter. For the reasons set forth therein, the Court grants summary judgment to the defendants on each of the claims asserted against them by Plaintiff Mark Tatton.

Accordingly, this case is terminated pursuant to Fed. R. Civ. P. 58.

IT IS SO ORDERED.