Pyle, Appellee, *v.* Pyle, Appellant.
(Two Cases.)

(Nos. 45726 and 45831—Decided
September 19, 1983.)

*Mr. William T. Wuliger,* for appellee Ralph E. Pyle in case No. 45726 and appellant Ralph E. Pyle in case No. 45831.
*Ms. Joyce Barrett,* for appellant Mary

Joan Pyle in case No. 45726 and appellee Mary Joan Pyle in case No. 45831.

Parrino, J. The instant cause is a consolidation of appeals from two lower court orders: case No. 45726 is an appeal by Mary Joan Pyle from an award of tort damages to Ralph Pyle on an action for intentional infliction of emotional stress rendered July 23, 1982 by Judge Richard McMonagle of the General Division of the Court of Common Pleas of Cuyahoga County; case No. 45831 is an appeal by Ralph Pyle from the August 12, 1982 entry of Judge Herbert Whiting of the domestic relations division denying Ralph Pyle's motion for change of custody.

The parties to this appeal were married in 1969; a decree of dissolution was entered November 1, 1978 which incorporated a separation agreement giving Mary Joan Pyle custody of the two minor children, James and Joseph. Ralph Pyle was to pay $50 per week per child as child support and was to have reasonable visitation. The agreement also stated that neither party would remove the children from the state of Ohio without approval of the other or a court order. At the time of the dissolution, Mary Joan Pyle lived in Brunswick, Ohio, with the children. The agreement also stated that neither party would interfere with the other's life.

In May 1979 Mary Joan Pyle moved to Columbus with the children. The move made visitation between Ralph Pyle and the children less convenient than when the children lived in Brunswick. At some point Ralph Pyle began deducting money from his child support payments to cover his visitation expenses of driving to Columbus. In September 1980 Mary Joan Pyle filed a motion to show cause claiming that Ralph Pyle was $604 in arrears. In November 1980 Ralph Pyle stopped paying child support.

Before the motion to show cause was heard Ralph Pyle filed a motion for change of custody (December 3, 1980) and a motion to modify support (January 30,

1981). An interim order was rendered by Judge Whiting August 3, 1981 whereby Ralph Pyle was ordered to pay $35 a week per child for support and $200 on the arrearages. He was also to have the children from August 8 until August 27. In December 1981 Ralph Pyle filed a motion to show cause stating that Mary Joan Pyle had denied all visitation since August 1981.

Meanwhile, on April 7, 1981 Ralph Pyle filed a complaint sounding in tort against Mary Joan Pyle. The complaint alleged intentional infliction of emotional distress. On February 12, 1982 an amended complaint was filed which added allegations of defamation by slander and invasion of privacy. Neither of the two added claims was pursued at trial.

In April 1982 a hearing on the pending domestic relations motions was heard by a referee and a referee's report including findings of fact and conclusions of law was filed. The referee recommended that both parties be found in contempt with sentences suspended if court orders were followed. The referee further recommended that Ralph Pyle's motion to change custody be denied, child support remain at $35 per week per child plus $5 a week on the arrearage and a definite visitation schedule be set with Ralph Pyle to pay the cost of transporting the children to visitation and Mary Joan Pyle absorbing the cost of transporting them back home. Ralph Pyle filed objections to the report which were overruled. Judge Whiting adopted the referee's report and judgment was entered August 12, 1982.

The trial on Ralph Pyle's tort complaint proceeded before Judge McMonagle in July 1982. Following his presentation, counsel for Mary Joan Pyle moved for dismissal which motion was overruled. Final judgment was entered for Ralph Pyle finding Mary Joan Pyle liable for intentional infliction of extreme emotional distress and awarding $150 compensatory damages, $2,500 punitive damages and $1,000 attorney fees.

Ralph Pyle filed a timely notice of appeal from Judge Whiting's order and Mary Joan Pyle filed timely notice of appeal from Judge McMonagle's order. The appeals were consolidated upon motion by Mary Joan Pyle.

I

The issue raised by Mary Joan Pyle, appellant in case No. 45726 (hereinafter "defendant"), is whether her former husband properly stated and proved an action for intentional tort against her without the occurrence of a contemporaneous physical injury which allegedly resulted in severe emotional distress to him. The events in question arose from a custody and visitation dispute between the parties.

At trial the plaintiff Ralph Pyle (hereinafter "plaintiff") based his case on the conduct of his ex-wife, defendant Mary Joan Pyle, regarding visitation. A number of incidents were asserted, but the focus was on the defendant's move to Columbus with the children without prior notice, her oft-repeated refusal to allow plaintiff visitation and a "peanut" incident during Christmas visitation of 1980. The Christmas incident involved a gift of peanuts from the youngest son to the plaintiff. Plaintiff has diverticulitis, a condition which prohibits him from eating certain foods, such as peanuts; the ingestion of such foods can cause severe pain and illness. Defendant was aware of plaintiff's condition, but neither of the children was.

When the boys came for their Christmas season visit with plaintiff in 1980, the youngest brought a gift-wrapped package of peanuts. Before the present was opened the boy was sitting on plaintiff's lap asking questions, one of which was to the effect of "Do you like peanuts?" Plaintiff responded that he could not eat peanuts. Plaintiff testified that the boy then jumped off his lap and ran into the other room crying hysterically. When plaintiff tried to calm the

child, he discovered that the child had brought him peanuts as his Christmas present. Plaintiff testified that he was so upset by this incident that he suffered headaches, stomach aches and had trouble sleeping. He did not eat any peanuts but was distressed by his son's reaction. Defendant knew about the peanuts, but did not mention them to plaintiff before the visit.

The court entered judgment in favor of plaintiff and specifically declared that defendant's actions were "intentional, deliberate, wanton and reckless and that it was done with malice and intent to injure and harm the Plaintiff, Mr. Pyle." The court also stated that:

"The Plaintiff, in his Complaint, has alleged that the Defendant's actions have directly and proximately caused him severe emotional and mental distress, stomach upset and nausia [sic], headaches, nervousness, loss of sleep, and other related physical and psychological injury and damage. Plaintiff has proved said allegations to this Court."

Defendant has raised six assignments of error for our review which are addressed in order.

"1. The trial court erred in overruling appellant's [defendant's] motion to dismiss for lack of jurisdiction over the subject matter."

Defendant argues that the general division of the court of common pleas was without jurisdiction to hear the complaint filed by plaintiff as proceedings were pending in the domestic relations division involving the very same fact situation. Her argument is that plaintiff had chosen his remedy, *i.e.*, a motion for change of custody and to modify support, and that he was thereby precluded from relitigating the facts in a tort case.

We find this position not supported by the facts of this case. Plaintiff's amended complaint stated three causes of action for intentional torts: intentional infliction of emotional distress, defamation by slander and invasion of privacy. These allegations, if proved, are properly within the purview of the general division of the court of common pleas rather than the domestic relations division. See R.C. 3105.011.

The complaint was sufficient to invoke the jurisdiction of the general division of the trial court and the court properly overruled defendant's motion to dismiss. The first assignment of error is overruled.

"2. The trial court erred in overruling appellant's [defendant's] motion to dismiss following the appellee's [plaintiff's] opening statement."

At the close of plaintiff's opening statement defendant again moved to dismiss claiming that the opening statement failed to indicate facts which if proved would support his claims. The opening statement did not refer at all to the second and third causes of action, defamation and invasion of privacy, and it may be assumed these causes were abandoned. On appeal defendant argues that this failure to mention anything in support of these two causes of action requires dismissal. However, plaintiff did raise allegations, which if proved, could support an action for intentional infliction of emotional distress. Therefore, the trial court acted properly in overruling defendant's second motion to dismiss.

"3. The trial court erred in overruling appellant's [defendant's] motion for a directed verdict at the conclusion of appellee's [plaintiff's] case in chief.

"4. The trial court erred in awarding compensatory damages for emotional distress in the absence of evidence of contemporaneous physical injury.

"5. The trial court erred in awarding punitive damages and attorney fees in the absence of a showing that the appellee [plaintiff] had sustained compensatory damages."

In light of our determination, explained below, that the decision of the trial court is against the manifest weight

of the evidence, these three assignments of error will be addressed as one.

The Ohio Supreme Court has recently recognized that an action for negligent infliction of serious emotional distress may be stated without contemporaneous physical injury. *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131. See, also, *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72. It is therefore clear that the intentional infliction of serious emotional stress absent contemporaneous physical injury is also a cognizable claim. See *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369.

We are mindful that this case raises a novel fact situation and one that can easily mark a milestone for the litigation of intentional infliction of emotional distress claims, especially of matters arising out of· post-decree behavior in domestic relations cases.

In order to recover on an action for intentional infliction of serious emotional stress four elements must be proved: 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," Restatement of Torts 2d (1965) 73, Section 46, comment d; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it," Restatement of Torts 2d 77, Section 46, comment j. It is not necessary that bodily injury or any physical impact be shown. The establishment of these four elements is consistent with the case law of other jurisdictions and with the Restatement of Torts 2d. The comments to Section 46 of the Restatement are particularly useful in delineating the elements. See, generally,

*Agis* v. *Howard Johnson Co.* (1976), 371 Mass. 140, 355 N.E. 2d 315; *Medlin* v. *Allied Investment Co.* (1966), 217 Tenn. 469, 398 S.W.2d 270; *Johnson* v. *Woman's Hospital* (Tenn. App. 1975), 527 S.W.2d 133; *Womack* v. *Eldridge* (1974), 215 Va. 338, 210 S.E.2d 145; *Grimsby* v. *Samson* (1975), 85 Wash. 2d 52, 530 P.2d 291.

In the instant case plaintiff failed to establish all four elements and we find that the trial court's decision that plaintiff proved intentional infliction of severe emotional stress to be against the manifest weight of the evidence. Although the evidence as presented could support a finding of proximate cause, there was failure of proof on the necessary elements of intent, outrageous behavior and serious emotional distress.

The law cannot protect against or provide damages for all of the mental anguish which may arise from the emotionally fraught atmosphere of post-decree interactions between divorced parents. The parties are required by the very nature of the breakup of a family to endure some measure of emotional discomfort. Some degree of mental anguish is inherent in nearly all domestic relations cases where the parties are unable to reach amicable child support, custody and visitation arrangements.

However, if one party acts in an extreme and outrageous manner, a manner which if the story is told would extract the exclamation of "outrageous!" from a reasonable person, then intentional infliction of severe emotional stress may be shown even if the parties are enmeshed in post-decree turmoil. Unless, however, the actions are outrageous and the resultant harm severe, no recovery may be had for the intentional tort.

We decide that defendant's actions in permitting a small child, very attached to his father, to give his father a gift of peanuts when it is known to defendant that the father cannot eat peanuts due to diverticulitis and without warning the

father about the nature of the gift, although unpleasant, is not so outrageous as to shock the reasonable person or to offend all sense of decency. We find this to be true even if coupled with proof of intentional interference with plaintiff's right to visitation with his sons.[1] We find the judgment of the trial court to be. against the manifest weight of the evidence. Accordingly, all damage awards, including attorney fees, are reversed and final judgment is rendered in favor of the defendant. App. R. 12(C).

"6. The trial court erred in awarding attorney fees in the absence of time records and evidence of the fair and reasonable value of the services rendered."

This assignment of error is rendered moot by our disposition of assignments three through five, but for the purpose of App. R. 12(A) it is addressed.

Plaintiff's counsel took the stand and testified in the narrative, by agreement with defense counsel, as to his fees. He stated that he has been practicing law since 1969 and gave his bar memberships and law associations since that time. He stated his general hourly rate to range between $80 and $110 an hour. He claimed approximately sixty hours of work through his office in preparation of this case and estimated that "approximately $3,000 worth of time, expenses have gone into prosecuting this case." On cross-examination he admitted that he had not brought time records to substantiate his claims. He further answered that he was charging plaintiff $80 an hour and that the factual information in this case was basically the same as that of the domestic relations proceedings.

An award of attorney fees is proper where punitive damages have been ordered. *Langhorst* v. *Riethmiller* (1977), 52 Ohio App. 2d 137 [6 O.O.3d 101]; *C & H*

*Transportation Co.* v. *Quality Stamping Products* (April 24, 1980), Cuyahoga App. No. 40802, unreported. However, the award of attorney fees is to be a reasonable amount determined by the trial court upon presentation of sworn evidence. Factors to be considered are set forth in *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85 [2 O.O.3d 65], and include, among others: 1) time and labor, novelty of issues raised, and necessary skill to pursue the course of action; 2) customary fees in the locality for similar legal services; 3) result obtained; and 4) experience, reputation and ability of counsel. See DR 2-106(B), Code of Professional Responsibility; Annotation (1974), 57 A.L.R.3d 475.

In the instant case no opposing evidence was offered as to the customary fees for similar legal services. Defense counsel on appeal argues that since no corroboration, in the form of time records, was presented on the issue of time spent any award of fees was unwarranted. However, it is clear that the trial court did not multiply the hours stated by plaintiff's counsel's hourly rate nor did the court award the total amount requested. Time records are not always required to substantiate a claim for attorney fees although the better practice is to supply them. In the case at bar, sufficient evidence was presented to allow the court to arrive at a reasonable attorney fee award of $1,000. Had we not reversed the trial judgment finding it to be against the manifest weight of the evidence, the award of attorney fees would have stood as rendered. The sixth assignment of error is overruled.

II

In case No. 45831 defendant-appellant Ralph Pyle (hereinafter referred to as "appellant") appeals the decision of the domestic relations division denying his request for change of custody and modifica-

---

[1] Plaintiff's complaint was couched in intentional tort. We do not decide, therefore, whether recovery could have been justified under a theory of negligent infliction of emotional stress.

tion of child support. For his first assignment of error appellant states:

"I. The trial court erred in denying defendant-appellant's motion for change of custody where the manifest weight of the evidence establishes that such change is in the best interests of the children, that appellee-mother is unfit as a custodial parent, that the children's present environment endangers their mental, moral or emotional development, and that the harm likely to be caused by a change of environment is outweighed by the advantages of such change to the children.

"A. The trial court erred in not employing as the standard for deciding a motion for modification of custody that such modification would serve the best interests of the children.

"B. Even if the trial court did not err by failing to apply the 'best interests' test, the trial court erred in denying the motion for change of custody under the standards provided in Ohio R.C. 3109.04."

This position is not well-taken as the record reflects that both the referee and the judge considered all the evidence and found no change of circumstances sufficient to cause a change in custody.

R.C. 3109.04 sets the standard for a change of custody. In pertinent part the statute reads:

"(B)(1) Except as provided in division (B)(2) of this section, the court shall not modify a prior custody decree unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his custodian, or either joint custodian, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the custodian or both of the joint custodians designated by the prior decree, unless one of the following applies:

"(a) The custodian or both joint custodians agree to a change in custody.

"(b) The child, with the consent of the custodian or of both joint custodians, has been integrated into the family of the person seeking custody.

"(c) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

"* * *

"(C) In determining the best interest of a child pursuant to this section, whether on an original award of custody or modification of custody, the court shall consider all relevant factors, including:

"(1) The wishes of the child's parents regarding his custody;

"(2) The wishes of the child regarding his custody if he is eleven years of age or older;

"(3) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

"(4) The child's adjustment to his home, school, and community;

"(5) The mental and physical health of all persons involved in the situation."

Appellant's argument that the court failed to apply the best interest test in considering appellant's motion for modification is without merit. It is clear that he sought a modification of an existing order and that he was claiming that "[t]he child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

The referee included findings concerning the sexual activity of the mother and her use of marijuana since the dissolution. The report also stated that the difficulties which the children may have stemmed from the lack of communication

between the parties. No evidence was presented to show that the children are significantly endangered by their present home environment other than appellant's testimony that he felt they were.

Appellant did not present evidence to the referee which would support his position that the children's home situation has changed since the original custody award except for the move to Columbus and less frequent visitations due to that move.

The record amply supports the court's conclusion that no change of custody was warranted under the circumstances presented. It should also be noted that the judgment entry contains a detailed visitation schedule and requires the mother to share the cost of such visitation.

The first assignment of error is overruled.

"II. The trial court erred in excluding relevant evidence regarding appellee-plaintiff's sexual conduct and state of mind and further erred in denying appellant-defendant's motion to reopen the case for submission of relevant newly-discovered evidence as to appellee's conduct since the time of trial."

The testimony regarding the sexual conduct of Mary Joan Pyle prior to the dissolution of the marriage was properly excluded as it has no bearing on a change of circumstances since the original custody award. Further, the evidence concerning post-dissolution sexual activity was cumulative as evidence of such activity was before the referee. The referee's report includes reference to the wife's activity and to appellant's allegation that the children had stayed at motels near Columbus with their mother. Evid. R. 403(B) permits the exclusion of relevant evidence if it is determined to be a needless presentation of cumulative evidence.

Although appellant argues that such evidence was also relevant to the credibility of Mary Joan Pyle, it does not appear to this reviewing court that the evidence attempted to be introduced went beyond that which was already before the court. Further, no proffer of what would be introduced was made.

No error is apparent from the record for the failure to grant appellant's motion to reopen the case for the submission of new evidence. Such decision is within the sound discretion of the trial court, *Ketcham* v. *Miller* (1922), 104 Ohio St. 372, and will not be disturbed in the absence of abuse of discretion. A review of the motion shows that it is unaccompanied by affidavit and the brief in support contains only bare allegations that Mary Joan Pyle deceived the court and that "[s]he has reverted to her old ways since this matter has been heard and submitted." It is also alleged that the oldest boy is now enrolled in Big Brothers and both boys are often unavailable for him. Under the circumstances it was not an abuse of discretion for the trial court to refuse to reopen the case. If Mary Joan Pyle is not following the order of the court in regard to visitation at this point in time, the proper avenue for redress is a motion to show cause. The second assignment of error is overruled.

"III. The trial court erred in adopting in toto the findings and recommendations of the referee who tried this case without having analyzed this case and reached its own independent judgment."

This assignment of error is without merit.

The referee submitted extensive findings of fact from which the trial judge could make an independent analysis and decision. There is no substantiation for the allegation of "rubber stamping" in the instant case. The report in this case is one of the most extensive and definitive we have seen. In addition to findings of fact and recommendations the referee has set forth the basis for these findings at length. *Logue* v. *Wilson* (1975), 45 Ohio App. 2d 132 [72 O.O.2d 140].

Appellant's objections basically challenged the referee's factual deter-

mination and in effect requested a *de novo* determination of facts in his favor. He offered no transcript of the proceedings nor any evidentiary material to support his position. The trial judge had only the referee's report and appellant's unsworn allegations before him. This court's duty is to review the actions of the trial court and we find that the trial court acted within its discretion by overruling the objections and adopting the referee's report. If a party is to successfully challenge the factual findings of a referee, that party must submit either transcript excerpts or other suitable evidentiary material to the trial judge in order to exemplify the error claimed. *In re Sisinger* (1982), 5 Ohio App. 3d 28; *Jeffries* v. *Jeffries* (May 19, 1983), Cuyahoga App. No. 45634, unreported; *Bromberg* v. *Bromberg* (April 7, 1983), Cuyahoga App. No. 45263, unreported.

Accordingly, we find no indication that the trial court did not independently analyze the case before it and reach its own decision. The third assignment of error is overruled.

"IV. The trial court erred in not terminating appellant's child support obligation where the evidence establishes that appellee has repeatedly and continuously prevented appellant from exercising his visitation rights and that appellee's financial resources have substantially increased since the time of the order of support."

This assignment of error is not well-taken.

In the motion to modify child support no direct request was made for termination of child support; the request was for modification. It is argued to this court that appellant is entitled to a termination of child support because his "court-ordered right to regular visitation with his children has been, and is now, being continuously and repeatedly denied by appellee." This statement, however, is not supported by the record, nor by the findings of the referee and order of the trial court.

The trial court recognized that some problems do exist in regard to visitation and a specific visitation schedule was incorporated as part of the court's order. There is no evidence that visitation has been totally denied, only that it has been less convenient than appellant would like.

Further the court did take action to reduce the required support from $50 per week per child to $35 per week per child, a reduction of thirty percent. The referee's report contains evidence of Mary Joan Pyle's increased financial resources and we must assume this also played a part in the reduction of child support.

Appellant's fourth assignment of error is overruled and the decision of the domestic relations division is affirmed.

### III

The decision of the general division of the court of common pleas in case No. 45726 is reversed and final judgment is rendered in favor of the defendant, Mary Joan Pyle. The decision of the domestic relations division of the court of common pleas in case No. 45831 is affirmed.

*Judgment accordingly.*

CORRIGAN, P.J., and MARKUS, J., concur.