This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Thomas Pappas appeals from the decision of the Summit County Court of Common Pleas, which granted summary judgment to the defendants on all but two claims. This court affirms.
 I.
Thomas Pappas was employed by United Parcel Service, Inc. (UPS) at its Akron facility as a part-time pre-loader of UPS trucks. On November 4, 1998, Pappas was working his usual early morning shift when Pappas began joking with three co-workers about their sexual preferences. During the conversation Angela Pearn, the supervisor of the area, approached. Pappas began to tell Pearn about each person's sexual preference, stating that one person liked "fat black boys" and another liked "straight gay men." Allegedly, Pearn did not join in the conversation except to say that the conversation was "gross." Pappas then stated that his own preference was for 28-year-old UPS workers with an 8-year-old son. Pearn took this as a direct reference to her, and decided to "escape" the conversation. She was shaking as she left the work area and UPS supervisor Ronald Bentzel noticed this as he passed. He inquired what was wrong, and Pearn related the gist of the conversation. Bentzel immediately consulted employee relations manager Steven Huyghe in Pearn's presence. Huyghe advised Pearn to write up the incident. Pearn had been uncertain what to do, because she had only been promoted to supervisor the week prior to the incident. Pearn wrote up the incident and gave her statement to her superiors.
Steven Huyghe interviewed the three other participants individually to discern what had happened. All three men stated that Pappas had made certain statements about sexual preferences and other derogatory remarks. However, all three men said that the statements were made in jest. Then the UPS supervisors called Pappas himself in to inquire about the incident. Pappas denied making any such comments. Upon reviewing the various statements of the witnesses to the conversation, UPS determined that Pappas was lying to them. On November 5, 1998, UPS fired Pappas for violations of the UPS collective bargaining agreement with the Teamsters, specifically for dishonesty and for "other serious violations."
Pappas filed a grievance with the union, and within two months Pappas was reinstated in his job at UPS with back pay for one month. One month following his reinstatement, Pappas filed suit against UPS and its managers Steven Huyghe, Jon Van Buren and Ronald Bentzel, for civil conspiracy, defamation, tortious interference with a business relationship, and intentional infliction of emotional distress. Pappas' wife Christi also joined the complaint alleging negligent infliction of emotional distress. Ultimately, Christi's claim was dismissed without prejudice. After lengthy depositions were filed with the trial court, the defendants filed a motion for summary judgment on the remaining claims. The trial court granted the motion for summary judgment on all claims except the defamation and tortious interference claims arising out of Mr. Bentzel's statement reporting that Pappas had engaged in sexually inappropriate behavior at UPS approximately six months prior to the incident at issue here. A few weeks later, the trial court made its previous order final, and this appeal ensued.
Pappas' sole assignment of error is that the trial court should not have granted summary judgment on his claims because there were genuine issues of material fact going to all the elements of the various claims.
 II. A. Standard of Review — Summary Judgment
To prevail on a summary judgment motion, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. To accomplish this, the movant must be able to point out to the trial court "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Id. at 293. If such evidence is produced, the non-moving party must proffer evidence that some issue of material fact remains for the trial court to resolve. Id.
Where the non-moving party would have the burden of proving all of a number of elements in order to prevail at trial, the moving party in the summary judgment motion may point to evidence that the non-moving party cannot possibly prevail on an essential element of the claim. See e.g.,Stivison v. Goodyear Tire Rubber Co. (1997), 80 Ohio St.3d 498, 499. If the moving party meets this burden of proof, the burden then shifts to the non-moving party to show that there is a genuine issue of material fact as to that element. Dresher, 75 Ohio St.3d at 293.
An appellate court reviews an award of summary judgment de novo and, like the trial court, must view the facts in the case in the light most favorable to the non-moving party. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Any doubt must be resolved in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12. With this standard in mind, we turn to the merits of Pappas' four claims.
 Defamation
Pappas' complaint states that UPS and its managers, Steven Huyghe, John Van Buren and Ronald Bentzel, made defamatory statements about Pappas. The complaint says that these defendants "wrote and/or caused to be written letters alleging acts of sexual misconduct and unprofessional, illegal and immoral conduct" by Pappas. The complaint specifically references three memoranda, one by Huyghe, one by Bentzel, and one by Angela Pearn.[1] Pappas also claims that the individual defendants published these letters to UPS management and to other organizations or persons without privilege and with actual malice or reckless disregard of the truth of the matters asserted in these memos.
In order to prevail on a claim of defamation, a plaintiff who is a private citizen must prove five elements: "(1) a false and defamatory statement; (2) about plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special harm to the plaintiff." Gosden v. Louis (1996), 116 Ohio App.3d 195,206, citing Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc. (1992), 81 Ohio App.3d 591, 601.
In their motion for summary judgment, the defendants pointed to the fact that in his deposition testimony, Pappas admitted to having made the statements alleged by the three writers. The defendants argued that Pappas' defamation claim must fail as there is no genuine issue of material fact that the statements made were false. In fact, two of the statements merely report that Pearn discussed the conversation with the supervisors, that she was upset with the situation, and that she was advised to write a statement memorializing the conversation.
Steven Huyghe's memo to the UPS plant manager Mark Cook simply stated that Angela Pearn told him that on November 4, 1998, Pappas "was talking about each one of [his immediate co-workers'] sexual preferences" and that Huyghe advised Pearn to write up an account of the incident so that he could investigate. Ronald Bentzel's statement likewise reported that on November 4, 1998, Angela Pearn reported to him that Pappas made comments about the sexual preferences of the co-workers involved in the conversation. In his deposition, Pappas acknowledged that he did initiate a conversation about the sexual preferences of the co-workers present at his work station on that day. Pappas does not contest the factual accuracy of Angela Pearn's statement of Pappas' part in the incident. There is some dispute as to whether Pearn made known to the conversation participants that she was offended and whether she also laughed at the comments.
Pappas essentially challenges the use of Pearn's statement to support an allegation of sexual harassment against him. UPS never stated explicitly that it was discharging Pappas for sexual harassment. However, viewing the facts in the light most favorable to Pappas, we will assume that the dismissal was for violation of the UPS sexual harassment policy. Pappas argues that Angela Pearn stated that she was not personally offended by some of the comments made in the conversation, and that consequently Pappas cannot have sexually harassed Ms. Pearn. However, the UPS sexual harassment policy states that the company will not tolerate behavior that creates a hostile work environment, and it directs employees to report "a situation that could constitute sexual harassment" which is defined as "verbal or physical conduct of a sexual nature." It is undisputed that Pappas engaged in "verbal * * * conduct of a sexual nature." His co-workers who engaged in the conversation testified that depending on a person's sense of humor, the comments could be offensive.
Pappas also claims that Pearn told him she was forced to write the statements by her managers, that she quit her job at UPS because she felt bad about causing him to lose his job, and that she was disillusioned with the whole process at UPS. However, in her deposition testimony Pearn strongly denied all of these allegations. Although she admitted that she was not personally offended at some of the off-color remarks, she claimed that certain remarks were "gross" and that she was shocked at the content of the conversation. She wanted to escape the conversation, she knew it was wrong, and she was uncomfortable listening to these comments. She also testified that she knew immediately that she should probably report the incident pursuant to UPS policy. Pearn testified that she quit her job at UPS about a month after the incident due to problems with childcare and because certain union members who blamed her for Pappas' dismissal threatened and intimidated her. Pearn vehemently denied being forced to write the statement or being told what to report. When confronted by Pappas and his attorney at her new place of employment, Pearn finally told Pappas, "you said what you said."
The defendants met their Dresher burden when they pointed to Pappas' deposition testimony supporting the accuracy of the defendants' statements, thus demonstrating that there was no genuine issue of material fact on an essential element of the defamation claim, namely that the statements were "false and defamatory." Pappas failed to meet his responsive burden to show that there remained a genuine issue as to the truthfulness of the statements made.
Viewing the facts in the light most favorable to Pappas, the statements made were accurate, and Pappas cannot prove an essential element of his defamation claim. Thus the defendants are entitled to judgment as a matter of law on that element and the trial court appropriately granted summary judgment on this claim. See Stivison, 80 Ohio St.3d at 499.
Pappas' assignment of error is overruled as it relates to his defamation claim.
 Tortious Interference with a Business Relationship
The Ohio Supreme Court has written that tortious interference with business relationships occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." A B- Abell Elevator Co. v. Columbus/Cent. OhioBldg. Constr. Trades Council (1994), 73 Ohio St.3d 1, 14. This court has explained that an employee cannot be liable in tort for interference with the business relationship of a co-worker and the employer if the action was taken within the scope of the employee's authority. Sooy v.Ross Incineration Serv. Inc. (Oct. 4, 1999), Lorain App. No. 98CA007031, unreported, at 23. "Consequently, in order to maintain a cause of action for tortious interference with employment against a co-worker, the plaintiff must demonstrate that the defendant acted solely in his or her personal capacity." Id., quoting in Norris v. Diamond Products, Inc. (Dec. 5, 1984), Lorain App. No. 3688, unreported, at 3.
The defendants' summary judgment motion pointed to Pappas' own deposition testimony and the defendants' affidavits to the effect that the individual defendants acted in their capacities as supervisors at UPS in accordance with the UPS policy against sexual harassment when they wrote and/or forwarded statements about the incident. This satisfies the defendants' Dresher burden to show that there is no genuine issue of material fact that they are entitled to judgment as a matter of law, because they did not act solely in their personal capacities. In response, Pappas merely asserts that defendants were "acting within the parameters of their own malice." Pappas never disputed that UPS had a policy that directed workers to report incidents that might constitute sexual harassment and a policy requiring supervisors to write up such incidents in order to ensure that the workplace is not a hostile environment.
Viewing the facts in the light most favorable to Pappas, the defendants engaged in actions which caused UPS to fire Pappas, but they did so at least in part within the scope of their authority as employees. The trial court appropriately granted the defendants' motion for summary judgment on the claim of tortious interference with Pappas' business relationship with UPS. Pappas' assignment of error is overruled as to this claim.
 D. Civil Conspiracy
To prevail on a claim of civil conspiracy, Pappas must prove (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. See Universal Coach, Inc. v. NewYork City Transit Auth., Inc. (1993), 90 Ohio App.3d 284, 292. The malice involved must include an action done "purposely, without a reasonable or lawful excuse, to the injury of another." Gosden v. Louis
(1996), 116 Ohio App.3d 195, 219.
Pappas alleged that the individual defendants conspired together to cause him to be fired from his job at UPS, and that the defamation and the tortious interference with the business relationship constituted the independent unlawful acts. Pappas specifically alleged that the defendants conspired to solicit and broadcast false statements about Pappas so that he would be terminated.
However, in their motion for summary judgment, the defendants pointed out that Pappas clearly admitted to the truth of the defendants' allegations about his inappropriate comments to his co-workers. Thus, the defendants met their Dresher burden to show that the defamation charge must fail along with the civil conspiracy charge based upon it. The same result obtains regarding Pappas' claim of interference with a business relationship, and his claim of civil conspiracy to interfere with the business relationship must also fail. In response, Pappas asserted that the UPS investigation into Pappas' sexually oriented remarks was mere pretext for seeking his termination without reasonable cause. However, Pappas has offered no evidence to support this assertion. As such, he has not met his responsive Dresher burden to show that there remains a genuine issue of material fact as to the civil conspiracy claim.
The trial court appropriately granted summary judgment to the defendants on the civil conspiracy claim. Pappas' assignment of error is overruled as to the civil conspiracy claim.
 Intentional Infliction of Emotional Distress
To prevail on his claim for intentional infliction of serious emotional stress, Pappas would have to prove four elements:
 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community;" 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."
(Internal citations omitted.) Pyle v. Pyle (1983), 11 Ohio App.3d 31,34. The Supreme Court of Ohio has emphasized that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to give rise to a claim of intentional infliction of emotional distress. Yeager v. Local Union 20 (1983),6 Ohio St.3d 369, 375, quoting Restatement of the Law 2d, Torts (1965) 71, Section 46(1), comment d, at 73.
In their motion for summary judgment, the defendants pointed out that Pappas admitted that (1) the statements made by UPS about his sexually oriented comments were true; (2) he did not seek any medical care, mental health care, or counseling of any kind due to his mental distress; and (3) he felt depressed and moody during the two months he was unemployed but he felt better once he returned to work a month before he filed the lawsuit. Both Pappas and his wife testified as to their embarrassment over their financial situation and their concern with their reputation in the community as a result of the allegations against him. However, this does not constitute mental anguish so extreme no reasonable person should be expected to bear it. See Pyle, 11 Ohio App.3d at 34.
The defendants met their Dresher burden by pointing to evidence that Pappas did not suffer the type of unbearable mental anguish that would justify a claim for intentional infliction of emotional distress. In response, Pappas merely stated that he suffered embarrassment over his financial condition. Viewing the facts in the light most favorable to Pappas, he did suffer some foreseeable embarrassment over both the allegations themselves and the financial consequences of losing his job. However, Pappas failed to show either that the defendants acted outrageously or that Pappas suffered from extreme mental anguish as a result. Consequently, the trial court appropriately granted summary judgment on the claim of intentional infliction of emotional distress.
We overrule Pappas' assignment of error as it relates to this claim.
 III.
We have found that the trial court appropriately granted summary judgment to the defendants on all the claims in dispute here. We overrule the assignment of error and affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
____________________________ WILLIAM R. BAIRD
BATCHELDER, P.J., CARR, J. CONCUR.
[1] Bentzel wrote another statement about an incident that allegedly occurred some six months prior to the events at issue here. The trial court denied summary judgment as to this statement by Bentzel, and it is not at issue in this appeal.