[Cite as *Lillie & Holderman v. Dimora*, 2015-Ohio-301.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100989

**LILLIE & HOLDERMAN**

PLAINTIFF-APPELLEE

vs.

**JAMES C. DIMORA**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-754423

**BEFORE:** Singer, J., Pietrykowski, P.J., and Jensen, J.

**RELEASED AND JOURNALIZED:** January 29, 2015

**ATTORNEY FOR APPELLANT**

David V. Patton
P.O. Box 39192
Solon, Ohio    44139


**ATTORNEYS FOR APPELLEE**

David S. Brown
Robert B. Weltman
Weltman Weinberg & Reis Co., L.P.A.
Lakeside Place, Suite 200
323 West Lakeside Avenue
Cleveland, Ohio    44113

ARLENE SINGER, J.:

¶ 1 Appellant, James C. Dimora, appeals the January 17, 2014 judgment of the Cuyahoga County Court of Common Pleas, granting judgment to appellee against appellant in the amount of $78,375 plus interest from February 12, 2011. Because the trial court properly applied the factors pursuant to *Pyle v. Pyle*, 11 Ohio App.3d 31, 35, 463 N.E.2d 98 (8th Dist.1983) and followed the mandate of this court on remand, we affirm.

## Background

¶ 2 This is the second time this case has made its way to the appellate level. This cause was originally filed in the Cuyahoga County Court of Common Pleas by the appellee law firm, Lillie & Holderman, for unpaid legal fees for representing appellant, James C. Dimora. The trial court granted summary judgment against appellant for the amount of $79,325 plus interest at the rate of 3 percent from February 12, 2011, based on quantum meruit.

¶ 3 Appellant appealed the judgment to this court. We reviewed de novo the summary judgment granted by the trial court. Appellee had submitted with its motion for summary judgment evidentiary material, including an affidavit from Richard Lillie, one of the members of the appellee law firm, invoices and billing statements that detailed the time spent and the legal services provided. The original complaint alleged that appellee performed 413.30 hours of legal services from July 14, 2008 through January 12, 2011, for a total of $103,325. The complaint also alleged that appellant had made payments in the amount of $24,000, leaving a balance owed of $79,325.

¶ 4 The trial court determined that by applying a billing rate of $250 per hour to the hours claimed, and crediting payment as submitted in the evidentiary materials by appellee, the amount owed was $79,325. Appellant failed to offer evidence to create a genuine issue of

material fact, however, we questioned whether the amount was properly determined under *Pyle,* 11 Ohio App.3d 31, 35, 463 N.E.2d 98. We also questioned the necessity of certain entries, specifically the billing entries of February 5, 9, 10, 15 and 16, 2010, the entries of December 17, 2010, and January 5 and 12, 2011.

¶ 5 We affirmed the trial court's judgment in part, and reversed in part, and remanded the case for the purpose of conducting a hearing pursuant to *Pyle* to determine the reasonableness of the rate of the attorney fees charged and the necessity for the attorney fees relating to specific dates.

¶ 6 At the hearing conducted on January 16, 2014, the trial court admitted an affidavit filed by appellant and heard testimony from four witnesses on behalf of appellee. Six exhibits were also entered into evidence. Appellant did not object to the exhibits and only cross-examined one of the witnesses. The court issued its judgment on January 17, 2014, awarding summary judgment to appellee.

## Scope and Standard of Review

¶ 7 Appellant argues that the entire claim is once more before us to be reviewed de novo. Appellee argues that because all issues were determined except those specifically remanded to the trial court, our review now is limited to those issues determined on remand only. Appellee agrees that a de novo review is proper on a summary judgment appeal.

¶ 8 Ruling on the issues not remanded remains the law of the case for all subsequent proceedings, *Nolan v. Nolan*, 611 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984), and those are barred from consideration by the doctrine of res judicata. *State v. Davis*, 139 Ohio St.3d 122, 2014-Ohio-1615, 9 N.E.3d 1031, ¶ 27-28. The trial court did not have jurisdiction to exceed our mandate and reconsider the remainder of the issues. *State v. Wright*, 6th Dist. Lucas Nos.

L-14-1041, L-14-1042, L-14-1043, and L-14-1044, 2014-Ohio-4734, ¶ 10. We therefore review only those specific issues addressed by the trial court in conformity with our mandate on remand. *Id.*

¶ 9 We review the trial court's decision on summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). In so doing, we use the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). The party moving for summary judgment bears the initial burden of apprising the trial court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on an essential element of the non-moving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact exists. *Id.* To satisfy this burden, the non-moving party must submit evidentiary materials showing a genuine dispute over material facts. *PNC Bank, N.A. v. Bhandari,* 6th Dist. Lucas No. L-12-1335, 2013-Ohio-2477, ¶ 9. The motion for summary judgment may only be granted when the following are established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in its favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978); Civ.R. 56(C).

¶ 10 Appellant submits the following assignments of error:

I.   The trial court erred in granting summary judgment because the Billing Statement violates the "fundamental tenet" of *Disciplinary Counsel v. Johnson*.

II. The trial court erred in granting summary judgment because, under *Disciplinary Counsel v. Hunter*, an attorney may not bill as legal services for tasks that are not legal services.

III. The trial court erred in granting summary judgment because, under *Disciplinary Counsel v. Hoskins*, an attorney may not bill for duplicative services.

IV. The trial court erred in granting summary judgment because of the conflicting evidence and genuine issues of material fact among the Lillie Affidavit, the Billing Statement, and the Dimora Affidavit.

V. The trial court erred in granting summary judgment because L&H accepted representation in a matter they were not competent to handle in violation of ORPC Rule 1.1.

VI. The trial court erred in granting summary judgment because L&H failed to credit Mr. Dimora's account $5,000 in violation of ORPC Rule 1.15.

VII. The trial court erred in granting summary judgment because there are genuine issues of material fact as to the value of L&H's alleged legal services.

VIII.   The trial court erred in granting summary judgment because there was a genuine issue of material fact in that L&H admitted on October 17, 2010[,] that most of the legal defense work in *U.S. v. Dimora* was going to occur in the future, thus L&H's pre-October 17, 2010 work was unreasonable.

**Analysis**

¶ 11      We consider appellant's first three assignments of error together. Appellant cites disciplinary cases for propositions of law in support of his appeal.  Appellant argues we should apply these cases to the matters at hand.  We have already addressed these arguments in our earlier decision when we declined to pursue this line of argument.  *See Lillie & Holderman v. Dimora*, 8th Dist. Cuyahoga No. 99271, 2013-Ohio-3431, ¶ 9.   We

specifically remanded this case to apply *Pyle*, 11 Ohio App.3d 31, 35, 463 N.E.2d 98. Therefore, appellant's first three assignments of error are found not well taken.

¶ 12 We next consider appellant's fifth assignment of error. At the January 16 hearing Lillie and Holderman testified about their education, experience and credentials. Lillie has practiced law for 34 years. He was an assistant United States attorney; he is board certified with the National Board of Trial Advocacy as a criminal advocate. His practice at the time of the hearing was about 80 percent criminal defense, primarily federal white-collar crime. He is licensed in Ohio, New York and the District of Columbia. Holderman has been an attorney since 1992, practicing with Lillie the entire time. Her practice is also primarily criminal defense, including about 80 percent federal white-collar crime. Attorneys Richard Blake and James Kersey, both criminal defense attorneys with extensive experience in white-collar crime, were qualified as experts. They testified that Lillie and Holderman were well qualified and competent to handle Dimora's case. We find nothing contrary in the record. We find appellant's fifth assignment of error not well taken.

¶ 13 Appellant complains that the trial court failed to credit his account $5,000. The payments made on his account were considered in our earlier decision and are not included in our remand mandate. *See Lillie* at ¶ 11, 16. Appellant's sixth assignment of error is found not well taken.

¶ 14 This case was remanded in part to determine the reasonableness of the rate of $250 an hour for legal services performed by appellee, on a quantum meruit basis. *Id*. at ¶ 16. Instead, in his seventh assignment of error, appellant argues that appellee's claimed hourly rate changed, and at various times was $150, $250 or $300 per hour. Lillie testified at the January 2014 hearing that his current hourly rate was about $350 per hour. In 2008, his

hourly rate was about $300 per hour. Lillie also testified that in the original unexecuted legal services agreement, the Lillie & Holderman current rate was identified as $250 per hour for the pre-indictment phase of representation. After the indictment, Lillie & Holderman submitted another legal services agreement to appellant that stated an hourly fee of $300. This agreement was not executed either. When appellant did not sign a fee agreement, appellee filed a motion in the federal district court to withdraw as counsel or for an appointment as counsel. The motion to withdraw was granted, but appellee was not appointed. Appellant claims that appointed counsel is paid $125 per hour and therefore appellee must have requested payment as appointed counsel at $125 per hour. However, appellee has consistently asked for compensation at an hourly rate of $250 in this action. Appellant's seventh assignment of error is found not well taken.

¶ 15    Appellant's eighth assignment of error is exactly the same as his third assignment of error in the first appeal and has therefore been considered and is therefore res judicata. *See id*. at ¶ 11. Appellant's eighth assignment of error is found not well taken.

¶ 16    In appellant's fourth assignment of error, he argues that genuine issues of material fact precluding summary judgment arise from conflicting evidence contained in the Lillie affidavit, appellant's affidavit and the billing statement.

¶ 17    Appellee argues that we should not consider appellant's affidavit as it should not be used to create a genuine issue of material fact on the issues already affirmed by this court. Appellee moved to strike this affidavit in the trial court, and the trial court denied the motion, in part, considering as relevant only portions of the affidavit.

¶ 18    We have examined appellant's affidavit and find that the averments made exceed the scope of the inquiry, i.e., addressing billing dates that are not the subject of the

remand order, alleged payments made, amount of attorney fees agreed upon and hours charged by appellee. These matters address the issues that have already been decided, are res judicata and are not relevant to the inquiry mandated on remand.   In conformity with Civ.R. 56(E), only those facts that are admissible in evidence will be considered.   The trial court made similar findings. However, we consider, as did the trial court, appellant's affidavit to the extent that it concerns the scope of appellee's legal representation.   In paragraphs three and four of appellant's affidavit, he attests that appellee was hired to represent him in a federal criminal matter that eventually became the *United States of America v. Dimora, et al.*, from July 2008 through the end of any trial, including any sentencing.   These portions are relevant to our consideration and review of certain billing entries covering representation in a civil matter in February 2010.

¶ 19      At the hearing on January 16, 2014, Lillie testified regarding the civil matters and the February 2010 entries we had specifically questioned.   Lillie testified that the civil matter was a suit against appellant for price fixing by LPG Company.   LPG wanted to take appellant's deposition.   The matter would eventually become a part of an indictment against appellant.   Appellee deemed that intervention in that suit was necessary as part of appellant's criminal defense. We agree and find no conflict in the record.

¶ 20      Lillie testified that appellant had never signed the fee agreements Lillie & Holderman had submitted to him.   Lillie told appellant, approximately four months after appellant was indicted, that appellee had to withdraw from representation because it needed a signed fee agreement.   When appellee received no response, Lillie filed a motion to withdraw in the federal district court in December 2010.   The motion was granted December 10, 2010. In our prior decision, this court questioned billing entries of December 17, 2010, that stated

"Telephone call with client, three times" and "Telephone call with bank, Chris Hess, two times." Lillie testified that these entries concerned calls from appellant about Lillie & Holderman representing him and bank calls from appellant's efforts to obtain a bank loan and mortgage to engage appellee.

¶ 21 Lillie explained that with respect to the January 5 billing entry "Meet with client and jury consultant," that appellant continued to call him and ask him about a jury consultant they had discussed at some point. Lillie arranged a meeting with appellant and a jury consultant for that date.

¶ 22 The January 12 billing entry "Attend hearing" refers to Holderman's attendance at a hearing to ask the judge to appoint Lillie & Holderman as counsel for appellant. The judge refused. Appellant had no other legal representation at that time.

¶ 23 We find no conflict and therefore no issues of material fact among the affidavits of appellant and appellee and the billing entries of February 2010, concerning representation in a civil matter and billing subsequent to appellee's motion to withdraw on October 17, 2010. We further find and agree with the trial court that the billing entries for December 17, 2010, and January 5 and 12, 2011, are not proper as the federal trial court had granted appellee's motion to withdraw and there is no evidence that appellee had been retained on these dates. We find appellant's fourth assignment of error not well taken.

### *Pyle*

¶ 24 The only issue remaining is the reasonableness of the rate charged by appellee, applying the factors set forth in *Pyle*, 11 Ohio App.3d 31, 35, 463 N.E.2d 98, using the analysis set forth in *Pyle*. Among the factors to be considered are "1) time and labor, novelty of issues raised, and necessary skill to pursue the course of action; 2) customary fees in the locality

for similar legal services; 3) result obtained; and 4) experience, reputation and ability of counsel." *Pyle* at 35.

¶ 25 At the January 16 hearing, Lillie and Holderman and attorneys Richard Blake and James Kersey testified. Lillie testified that he and Holderman work together on their cases, each reviewing the same documents. They do not double bill for their time. As noted earlier, Lillie testified that he had practiced law for over 30 years, was an assistant United States attorney, is board certified with the National Board of Trial Advocacy as a criminal advocate, and is licensed to practice in Ohio, New York and the District of Columbia. His practice consists of about 80 percent criminal defense work, primarily white-collar crime. He testified that he is in federal court several times a week.

¶ 26 Lillie testified that his hourly rate for criminal defense representation was about $300 per hour in 2008, and is currently $350. Lillie testified that the original unexecuted legal services agreements contained hourly rates of $250 and $300. The fee is determined by "the scope of the work, the scope of the engagement, the kind of charges, the breadth of the indictment, the complexity of the legal issues, the amount of time that the case will take, the expectation of the amount of time that it will take both during grand jury investigation and during trial." Lillie thought the fees appellee charges are typical of the northeast Ohio region or on the "low side." From July 2008 through January 2010, appellant's case took approximately one-third of appellee's law practice time. Lillie further testified that they had to "turn away no less than a half dozen other prospective clients."

¶ 27 Holderman testified that she was admitted to the bar in 1992, and began her career at appellee law firm, first as a clerk, then an associate, and then as a partner. She has practiced criminal law for 21 years and has the same caseload as Lillie. She is admitted to the

Federal District Courts in the Northern and Southern District of Ohio, the District Court in D.C., the Sixth Circuit, the Seventh Circuit, and the United States Supreme Court. She is in federal court a few days each week. She also practices in state court. She testified that appellant would contact appellee firm "at all hours" and spent "hundreds of hours, night and day" representing appellant and "tons more" than the hours billed.

¶ 28 Blake testified to his qualifications and experience, and was qualified as an expert witness in white-collar crime defense, pursuant to Evid.R. 702, to testify about a reasonable rate for representation in a white-collar crime matter. Blake stated that he currently had between 20-30 current cases in his own practice. None of the cases had an agreed upon fee of $250 per hour. He charges over $500 per hour in Ohio in cases where money is not an issue. He determines the fee amount by the client's ability to pay, strength of the case and time involved. He has known Lillie since he was with the U.S. Attorney's office. By then, Lillie was a defense attorney. Blake was familiar with the criminal corruption matters in Cuyahoga County appellant was involved in as Blake had been hired by Cuyahoga County to conduct an internal investigation after they had become public. He also represented several of the individuals charged. For purposes of testifying in this matter, he reviewed statistics of fees charged by attorneys in Ohio in private practice specializing in criminal law. He found the billings were between $175 and $350 per hour. Attorneys who were partners with two or more attorneys billed an average between $185 to $400 per hour. He considered the reputation, ability and experience of counsel and customary fees in Cleveland to similar services, the novelty of the issues and the necessary skill required. Appellee's exhibit No. 5, admitted as evidence without objection, is Blake's written opinion. In it, he states that he considered counsel's reputation, ability and experience, the customary fees in Cleveland for similar legal

services, the novelty of the issues raised and the necessary skills required to adequately represent the client. In arriving at his opinion, he relied on personal knowledge, knowing both attorneys for more than 15 years, prosecuting their clients, bar activities and knowledge of their reputation in the community. He opined that they are professional, excellent attorneys and are highly regarded by their peers and highly qualified to represent clients in federal corruption matters.

¶ 29 Based on conversations with local attorneys, he understood that fees for similar representation ranged from $250 an hour to $800 per hour. Larger firms bill at larger rates than the smaller firms. He concluded that $250 an hour was a reasonable rate.

¶ 30 Kersey, too, was qualified as an expert witness to testify regarding a reasonable fee for criminal defense representation, also without objection. He testified that his typical fee for criminal defense representation is $450 an hour. He testified that he thought $250 an hour was entirely reasonable, especially because two attorneys were working on the case, cutting the fee in half and that appellee was under pressure from appellant because of the volume of work to be done. Kersey would have charged $450 an hour. Exhibit 6 is Kersey's written opinion, also admitted without objection. In it, he states that he considered the factors under *Pyle* in arriving at his opinion. He stated that there were hours of recorded conversation that had to be reviewed, thousands of pages of documents, weekly meetings with the government and client and extreme pressure in representing this client. He stated that customary fees for federal defense cases range from $450 to $750 per hour in the Northern District of Ohio. He opined that it would be unethical for counsel to promise or otherwise guarantee a result. He also testified that attorneys Lillie & Holderman have years of experience, are well known, and that the rate of $250 an hour for attorney fees is reasonable.

¶ 31 We have considered the testimony and the exhibits admitted at the January 16, 2014 hearing, and find there are no genuine issues of material fact shown and that there is evidence consistent with *Pyle*, 11 Ohio App.3d 31, 35, 463 N.E.2d 98, that the rate of $250 per hour for representing appellant in this matter is reasonable.

¶ 32 The trial court reduced its original attorney fee award of $79,325 by $950. This was determined by subtracting 3.8 hours claimed in the billing entries for December 17, 2010, and January 5 and 12, 2011, at an hourly rate of $250. We have determined that $250 per hour is reasonable and we agree with the trial court that the February 2010 billing entries were proper, but the billing entries for December 17, 2010, and January 5 and 12, 2011, are not. We agree with the calculation made by the trial court.

¶ 33 We find no error in the court's decision to award judgment to appellee against appellant in the amount of $78,375 plus interest at the rate of 3 percent from February 12, 2011. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

¶ 34 Judgment affirmed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ARLENE SINGER, JUDGE

MARK L. PIETRYKOWSKI, P.J., and
JAMES D. JENSEN, J., CONCUR

Judges Mark L. Pietrykowski, Arlene Singer, and James D. Jensen, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.